UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| **DIRECTV, Inc., a California corporation,**<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL GOLDFARB, AND JOHN DOES 1-3,<br><br>Defendant. | No.<br>**03-12406 GAO**<br><br>COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF TITLE 47 U.S.C. § 605, TITLE 17 U.S.C. §§ 1201-1205, TITLE 18 USC §§ 2510 -2521 AND M.G.L. CH. 93A, § 2 AND § 11 |

**MAGISTRATE JUDGE** ⎯⎯⎯⎯

Plaintiff DIRECTV, Inc., by and through its attorneys, alleges as follows:

### INTRODUCTION

1. Plaintiff DIRECTV, Inc. brings this action against Michael Goldfarb for unlawfully manufacturing, distributing, and/or selling devices intended to facilitate the illegal and unauthorized reception and decryption of DIRECTV's subscription and pay-per-view television programming.

2. Plaintiff DIRECTV, Inc. is the nation's leading direct broadcast satellite system, delivering approximately 225 channels of digital entertainment and informational programming to approximately 11.0 million homes and businesses equipped with specialized DIRECTV receiving equipment. DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its television programming.

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF – Page 1

3. At all relevant times, News Datacom Limited, NDS Americas, Inc. and NDS Limited ("NDS") developed the technology and equipment used by DIRECTV to encrypt its transmissions, including Access Cards which, upon activation by DIRECTV, permit subscribers to view DIRECTV's television programming in a decrypted – descrambled – format. The Access Card is a serialized card with a unique electronic identifying number and is provided to subscribers as a component of the digital satellite equipment. It is identical in size and shape to a credit card; however, each Access Card has an embedded microprocessor that controls the decryption process and other functions.

4. Defendant and John Does 1-3 have engaged and continue to engage in the unlawful manufacture, distribution and/or sale of illegal devices which are intended to permit viewing of DIRECTV's satellite television programming without authorization by or payment to DIRECTV.

5. Defendants' actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205; the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521; M.G.L. Ch. 93A, § 2 and § 11; and state common law. Plaintiff DIRECTV brings this action to restrain these illegal activities against it.

## PARTIES

6. Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the state of California.

7. Defendant Michael Goldfarb is a resident of Holliston, MA.

8. Defendants John Does 1-3 are individuals and entities whose names are currently unknown to DIRECTV and who have acted in concert with defendants and

participated in the acts and practices alleged herein. Upon information and belief, John Does 1-3 include individuals and entities currently located in the United States and Canada.

## JURISDICTION AND VENUE

9. This action arises under the Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205; the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521; and state law.

10. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a)-(b), 47 U.S.C. § 605(e)(3)(A), 17 U.S.C. § 1203(c) and 18 U.S.C. § 2520(a), and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Personal jurisdiction is proper because defendants are either residents of Massachusetts or have established minimum contacts with Massachusetts.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)-1391(b)(2) as all defendants reside in Massachusetts, at least one defendant resides in this District, and a substantial portion of the events giving rise to DIRECTV's claims arose in this District.

## FACTUAL BACKGROUND

13. Plaintiff DIRECTV, Inc. has invested billions of dollars to develop the United States' first high-power, direct broadcast satellite system. DIRECTV delivers hundreds of channels of digital entertainment and informational programming to homes and businesses in the United States equipped with specialized DIRECTV receiving equipment – a small satellite dish (typically 18 inches in size), an integrated receiver/decoder ("IRD")

and an Access Card which is necessary to operate the IRD. DIRECTV's satellite television programming currently includes major cable networks, major studio movies, local broadcast stations in certain markets, and special event programming offered on a pay-per-view basis, and a variety of other sports and special interest programs and packages.

14. NDS is a developer and supplier of proprietary encryption and "smart card" technology. NDS researches, develops, manufactures and sells electronic identification, signature, encryption and security products, devices and services. In particular, NDS provides subscriber management systems, technology and products – including Access Cards – that allow the scrambling and unscrambling of satellite transmissions.

15. At all relevant times, NDS supplied DIRECTV Access Cards that were programmed and serialized (*i.e.*, assigned unique electronic identifying numbers) by NDS. The cards were provided to consumers as an integrated component of the IRD. IRDs were manufactured by Hughes Network Systems, Thomson Consumer Electronics (under the RCA, GE and other brand names), Sony Corporation and other manufacturers authorized by DIRECTV.

16. Persons who have purchased DIRECTV receiving equipment can subscribe to various packages of DIRECTV programming, for which the subscriber pays a periodic fee, usually monthly. Additionally, a subscriber can order pay-per-view events and movies either by "impulse," using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

17. DIRECTV does not manufacture digital satellite system hardware. DIRECTV sells programming, which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming rights holders. DIRECTV contracts and pays for the right to distribute the

programming to its subscribers, and holds license rights under the Copyright Act to exhibit the programming to its subscribers.

18. All programming distributed by DIRECTV is delivered to DIRECTV's broadcast centers in Los Angeles, California or Castle Rock, Colorado. At the broadcast centers, DIRECTV digitizes and compresses the programming. The resulting signal is encrypted – electronically scrambled – by DIRECTV to prevent unauthorized reception. DIRECTV then transmits the signal to satellites located in stationary orbits approximately 22,300 miles above the Earth.

19. The satellites relay the encrypted signal back to Earth, where it can be received by DIRECTV's subscribers equipped with satellite dishes and IRDs. The small satellite dishes (typically 18 inches in size) can be mounted on a rooftop, windowsill or deck railing at the subscriber's home or business. The signal is received by the dish and transmitted by wire to the IRD. The IRD (a box approximately the size of a VCR player) acts like a computer which processes the incoming signal using the credit card sized Access Card. The Access Card is loaded into the IRD through a slot in the front or back of the unit.

20. The Access Card is historically provided to DIRECTV subscribers as an integrated component of the IRD. After a subscriber installs the dish and IRD at his or her home or business, and purchases one or more programming packages from DIRECTV, DIRECTV electronically activates the subscriber's Access Card by downloading software over the satellite to the card enabling it to decrypt the programming ordered by the subscriber.

21. The Access Card acts as a reprogrammable microprocessor and uses "smart card" technology to (1) authorize the decryption of that DIRECTV programming specifically purchased by the subscriber, and (2) capture and transmit to DIRECTV the

subscriber's impulse pay-per-view information (via a modem located within the subscriber's IRD).

22. The Access Card is a key component in DIRECTV's security and accounting systems, as more specifically described below:

(a) <u>Security System</u>: To prevent unauthorized signal reception and program viewing, DIRECTV's transmissions of television programming are encrypted at DIRECTV's broadcast centers. The Access Card enables the subscriber's IRD to decrypt the signals and permit program viewing in accordance with the subscriber's authorized subscription package and pay-per-view purchases.

(b) <u>Accounting System</u>: The Access Card also records the subscriber's purchases of DIRECTV pay-per-view programming. Impulse pay-per-view purchases are recorded on the subscriber's Access Card and, at periodic intervals, the Access Card transmits this viewing history by initiating a telephone call (by means of a modem within the IRD) to DIRECTV's Conditional Access Management Center ("CAMC") in Castle Rock. From the CAMC, the information is forwarded to DIRECTV's billing system.

23. Plaintiff DIRECTV has significant interests, commercial and otherwise, in maintaining and securing the integrity of its programming, technology and products, including the Access Cards, and in prohibiting unauthorized reception and use of their protected communications.

## DEFENDANTS' WRONGFUL CONDUCT

24. Beginning at a time unknown and continuing to the present Michael Goldfarb and John Does 1-3 have engaged in repeated illegal and improper acts, practices and schemes:

(a)  to assist, aid and abet the illegal and unauthorized reception and decryption of DIRECTV's satellite transmissions of television programming by persons not authorized to receive such programming;

(b)  to defraud DIRECTV of subscription and pay-per-view revenues and other valuable consideration by manufacturing, distributing, and selling illegal devices intended to facilitate the reception and decryption of DIRECTV's satellite television programming without authorization by or payment to DIRECTV;

(c)  to defraud DIRECTV of revenues and other valuable consideration by manufacturing, distributing and selling illegal devices intended to illegally modify DIRECTV Access Cards;

(d)  to misappropriate and convert to defendants' use trade secrets and confidential research, development and commercial information belonging to DIRECTV, and to infringe DIRECTV's proprietary interests therein, by copying, reproducing, cloning and modifying computer programs and other information developed by or on behalf of DIRECTV, without authorization by or payment to DIRECTV;

(e)  to interfere with DIRECTV's contractual and prospective business relations by manufacturing, distributing and selling illegal satellite signal theft devices to existing and prospective DIRECTV subscribers; and

(f)  to conceal defendants' fraudulent schemes and activities from and to hinder detection by DIRECTV and law enforcement officials.

(g)  at all times material hereto, Defendants possessed the requisite digital system hardware ("DSS Hardware"), including satellite dish, integrated receiver/decoder ("IRD"), and/or programming, required to use the illegally modified DIRECTV access card, through which Defendant actually and intentionally intercepted

DIRECTV's encrypted satellite transmissions of television programming without authorization or payment to DIRECTV in violation of 47 U.S.C. § 605 and 18 U.S.C. §§ 2510-2521.

## EVIDENCE RECOVERED FROM RAIDS

25. On November 29, 2001 in the matter of DIRECTV v. Derek Trone, et al., Case No. SA CV-01-370-DOC (Anx), filed in the United States District Court, Central District of California, DIRECTV executed Writs of Seizure with the assistance of the United States Marshal Service at a residence in Westfield, Indiana. From this raid, DIRECTV recovered certain shipping records related to DSS-Pro and Smartcard Solutions, internet-based companies which provided illegal Access Card reprogramming services and pirate device sales. During and subsequent to the raids, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts and other records. Those records evidence certain of the Defendant's purchases of illegal Pirate Access Devices. In reliance upon those records and other information, and upon information and belief, DIRECTV sets forth the allegations in this Complaint.

26. Defendants have knowingly and willfully combined and conspired with others to defraud plaintiff DIRECTV of rights, properties and revenues belonging to it. Defendants have knowingly and willfully combined and conspired with others to defraud plaintiff DIRECTV of rights, properties and revenues belonging to it.

27. Upon information and belief, Defendant GOLDFARB purchased numerous Pirate Access Devices from one or more pirate device dealers as described below. GOLDFARB placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers. Defendant GOLDFARB purchased these illegal signal theft devices and resold them in interstate commerce. Specifically, these illegal purchases included the following transactions:

   a. The defendant, GOLDFARB purchased approximately fourteen (14) signal theft devices from DSS-Pro. These purchases began on or about February 21, 2001, and continued until at least July, 3, 2001; GOLDFARB Purchased these illegal signal theft devices and resold them in interstate commerce.

28. By distributing and selling illegal satellite signal theft devices, defendants have directly and intentionally facilitated the unauthorized reception and decryption of DIRECTV's satellite television programming by persons not authorized to receive it.

29. The Defendants, at all times pertinent hereto, and as alleged herein, were engaged in trade or commerce in the Commonwealth of Massachusetts:

   (a) Through the selling and/or distributing of Pirate Access Devices to third parties; and/or

   (b) Through the modification, assembly or manufacturing of Pirate Access Devices for the benefit of third parties.

30. As a result of the Defendants' sales, distributions, modifications, assembly and/or manufactured of Pirate Access Devices to or for the benefit of third parties DIRECTV has suffered actual money damages.

31. Defendants' wrongful conduct, as herein alleged, has caused and continues to cause significant and irreparable harm to DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

## FIRST CLAIM

### (FACILITATING UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS IN VIOLATION OF THE COMMUNICATIONS ACT, 47 U.S.C. § 605(a))

32. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

33. By designing, developing, manufacturing, assembling, modifying, importing, exporting, trafficking, distributing and/or selling illegal satellite signal theft devices and providing software, information and technical support services therefor, defendants have assisted the unauthorized reception and use of DIRECTV's satellite transmissions of television programming by persons not authorized to receive such transmissions, in violation of 47 U.S.C. § 605(a).

34. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing

DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

35. Defendants have violated Section 605(a) of the Communications Act willfully and for purposes of direct or indirect commercial advantage or private financial gain.

36. Defendants knew or should have known that assisting third persons in the reception and use of DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 47 U.S.C. § 605(a).

## SECOND CLAIM

### (MANUFACTURE AND SALE OF SIGNAL THEFT DEVICES IN VIOLATION OF THE COMMUNICATIONS ACT, 47 U.S.C. § 605(e)(4))

37. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

38. Defendants have engaged in the business of manufacturing, assembling, modifying, importing, exporting, distributing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption of DIRECTV's satellite transmissions of television programming, or are intended by defendants to assist other persons in the unauthorized reception and use of DIRECTV's satellite transmissions of television programming, in violation of 47 U.S.C. § 605(e)(4).

39. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable

consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

40. Defendants have violated Section 605(e)(4) of the Communications Act willfully and for purposes of direct or indirect commercial advantage or private financial gain.

41. Defendants knew or should have known that manufacturing, assembling, modifying, importing, exporting, distributing, and/or selling illegal satellite signal theft devices, which are primarily of assistance in unauthorized reception and decryption of DIRECTV's satellite television programming, was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 47 U.S.C. § 605(e)(4).

### THIRD CLAIM

### (MANUFACTURE OF AND TRAFFIC IN SIGNAL THEFT DEVICES IN VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201(a)(2))

42. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

43. Defendants were and are actively engaged in the business of manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices, knowing or having reason to know that such devices (a) are primarily designed or produced for the purpose of circumventing DIRECTV's encryption and conditional access technological measures, (b) have only limited commercially significant purpose or use other than to circumvent DIRECTV's encryption and conditional access

technological measures, or (c) are marketed by defendants and persons acting in concert with defendants for use in circumventing DIRECTV's encryption and conditional access technological measures, in violation of 17 U.S.C. § 1201(a)(2).

44. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

45. Defendants have violated Section 1201(a)(2) of the Digital Millennium Copyright Act willfully and for purposes of commercial advantage or private financial gain.

46. Defendants knew or should have known that manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices, was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## FOURTH CLAIM

### (TRAFFIC IN SIGNAL THEFT DEVICES IN VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201(b)(1))

47. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

48. Defendants were and are actively engaged in the business of manufacturing, importing, exporting, offering to the public, providing and/or selling illegal satellite signal theft devices, knowing or having reason to know that such devices (a) are primarily designed or produced for the purpose of circumventing the protection afforded by

DIRECTV's encryption and conditional access technological measures, (b) have only limited commercially significant purpose or use other than to circumvent the protection afforded by DIRECTV's encryption and conditional access technological measures, or (c) are marketed by defendants and persons acting in concert with defendants for use in circumventing the protection afforded by DIRECTV's encryption and conditional access technological measures, in violation of 17 U.S.C. § 1201(b)(1).

49. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

50. Defendants have violated Section 1201(b)(1) of the Digital Millennium Copyright Act willfully and for purposes of commercial advantage or private financial gain.

51. Defendants knew or should have known that manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## FIFTH CLAIM

### (UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF FEDERAL WIRETAP LAWS, 18 U.S.C. § 2511(1)(a))

52. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

53. By designing, developing, manufacturing, assembling, modifying, importing, exporting, trafficking, distributing and/or selling illegal satellite signal theft devices, defendants have intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmissions of television programming, in violation of 18 U.S.C. § 2511(1)(a).

54. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

55. Defendants have engaged in conduct in violation of Section 2511(1)(a) of the Federal Wiretap Laws for a tortious or illegal purpose, or for purposes of direct or indirect commercial advantage or private commercial gain.

56. Defendants knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 18 U.S.C. § 2511(1)(a).

## SIXTH CLAIM

### (MANUFACTURE AND SALE OF SIGNAL THEFT DEVICES IN VIOLATION OF FEDERAL WIRETAP LAWS, 18 U.S.C. § 2512(1)(b))

57. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

58. Defendants have engaged in the business of manufacturing, assembling, possessing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of DIRECTV's satellite transmissions of television programming, and that such devices, or any components thereof, have been or will be sent through the mail or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b).

59. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

60. Defendants have engaged in conduct in violation of Section 2512(1)(b) of the Federal Wiretap Laws for a tortious or illegal purpose, or for purposes of direct or indirect commercial advantage or private commercial gain.

61. Defendants knew or should have known that manufacturing, assembling, possessing, and/or selling illegal satellite signal theft devices which are primarily useful for the purpose of surreptitious interception of DIRECTV's satellite television programming, was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 18 U.S.C. § 2512(1)(b).